# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57514-1-II |
| Appellant, | |
| v. | |
| TANNER DAVID BARBER, | UNPUBLISHED OPINION |
| Respondent. | |

PRICE, J. — In 2019, Tanner D. Barber was sentenced to an indeterminate term of 66 months to life in prison for two convictions of second degree rape.

Several years later, following changes in the case law, Barber brought a CrR 7.8(b) motion to urge the sentencing court to remove the indeterminate component of his sentence.  Rather than address the motion under CrR 7.8(b), the sentencing court, on its own, utilized CrR 7.8(a) for correction of a scrivener's error.  According to the sentencing court, it had originally intended Barber's sentence to be determinate, so the indeterminate term reflected in the judgment and sentence was a mistake.  Thus, the sentencing court corrected the judgment and sentence pursuant to CrR 7.8(a) to impose a determinate term of 66 months and signed an order purportedly effective back to 2019.  The State appealed.

Soon thereafter, our Supreme Court decided *In re Personal Restraint of Forcha-Williams*, 200 Wn.2d 581, 598-99, 520 P.3d 939 (2022) (*Forcha-Williams* II), holding that sentencing courts lack the discretion to impose a determinate term in Barber's circumstances.

No. 57514-1-II

Barber now acknowledges the invalidity of his sentence following *Forcha-Williams* II, but he claims that the time for the State to appeal the sentence has passed. We exercise our discretion to extend the time allowed for the State to appeal. We further invalidate Barber's determinate sentence and order reinstatement of Barber's original indeterminate sentence.

FACTS

I. BACKGROUND

In 2018, based on events occurring 10 to 16 years prior, Barber was convicted of numerous sexual-assault crimes, including two counts of second degree rape, four counts of first degree rape of a child, and five counts of first degree child molestation. All of the crimes were committed while Barber was under the age of 17.

II. BARBER'S SENTENCING

Barber did not have any previous criminal history, but because of his multiple offenses, his standard range sentence was between 240 to 318 months. Barber's second degree rape convictions were subject to indeterminate sentencing, requiring the sentencing court to impose a minimum and maximum term, with the applicable maximum term of life in prison. *See* RCW 9.94A.507(3)(a), (b); RCW 9A.44.050(2); RCW 9A.20.021(1)(a).[1]

At his sentencing hearing, the sentencing court considered factors related to Barber's youth and imposed an exceptional minimum term below the standard range. The sentencing court stated that Barber's sentence would be "66 months in the Department of Corrections," explaining that

---

[1] At the time of Barber's crimes, various versions of former RCW 9.94A.712 were in effect. The statute has since been recodified as RCW 9.94A.507. Because the language relevant to this case has not substantially changed, we cite to the current version of the statute.

2

the State and Barber "[could] figure that out anyway that you want, but that's the way that it will be." Clerk's Papers (CP) at 121. The sentencing court did not explicitly state whether the 66-month term was the minimum term for an indeterminate sentence.[2]

The State prepared the judgment and sentence. Consistent with the predecessor to RCW 9.94A.507, the second degree rape convictions were depicted on the judgment and sentence as indeterminate terms of 66 months to life. The State did not expressly state on the record during the hearing that the second degree rape convictions were depicted as indeterminate sentences on the form; it merely explained that it had "put 66 months on all of the counts. I assume that I have that number correct." CP at 123.

On January 11, 2019, the sentencing court signed the State's prepared judgment and sentence.

III. BARBER'S CrR 7.8(b) MOTION FOR RESENTENCING

Within the next couple years, several cases were published addressing sentencing for crimes committed by juveniles. *See, e.g., In re Pers. Restraint of Forcha-Williams*, 18 Wn. App. 2d 167, 490 P.3d 255 (2021) (*Forcha-Williams* I), *rev'd*, 200 Wn.2d 581, 520 P.3d 939 (2022). In one of these cases, *Forcha-Williams* I, Division One of this court addressed whether sentencing courts had the discretion when sentencing juvenile offenders to impose an exceptional sentence with a determinate term when the Sentencing Reform Act[3] otherwise required an indeterminate

---

[2] Although the sentencing court did not address whether the sentences for the second degree rape convictions were determinate or indeterminate, the State had previously explained in its sentencing memorandum to the court that "only [the second degree rape] Counts . . . are indeterminate since [Barber] was under 18 when the crimes were committed." CP at 94 n.1.

[3] Ch. 9.94A RCW.

sentence. *Id.* at 181-82. Division One held that the sentencing court's discretion included the ability to issue such a sentence. *Id.* at 182.

Following Division One's decision, Barber filed a motion in March 2022 under CrR 7.8(b), arguing he should be resentenced due to a mistake or " 'any other reason and reason justifying relief.' " CP at 35 (quoting CrR 7.8(b)). Citing *Forcha-Williams* I, Barber argued he could receive a maximum term less than life imprisonment and he would no longer be under the direction of the Indeterminate Sentence Review Board (ISRB). Barber argued that the sentencing court specifically sentenced him to an exceptional minimum sentence and would likely have sentenced him to a determinate term if it had known it had that option.

IV. COURT'S ORDERS AND STATE'S APPEAL

In October 2022, without holding a hearing or otherwise taking action on Barber's CrR 7.8(b) motion, the sentencing court issued an order under CrR 7.8(a) related to Barber's judgment and sentence. In an "Order on Motion for Relief from Judgment," the sentencing court explained that it believed Barber's indeterminate sentence was a scrivener's error because the sentencing court "only manifested its intention to impose a determinate sentence of 66 months rather than an indeterminate sentence of '66 months to life.' " CP at 164 (underscore omitted).

The sentencing court also explained that the indeterminate aspect of the sentence was a "fundamental defect." CP at 164. To support its conclusion that the sentence was defective, the sentencing court quoted RCW 9.94A.535, which is a general statute governing exceptional sentences. The statute requires that "[a] sentence outside the standard range shall be a determinate sentence." RCW 9.94A.535. The sentencing court explained it believed, due to RCW 9.94A.535, "[Barber] could not legally receive an indeterminate sentence once the court determined to depart

4

from the standard sentencing range." CP at 164. A hearing was set for a few weeks later. The sentencing court directed that "[a]t that time, [Barber] should be prepared to advise the [c]ourt if, given [the] ruling, he still wants to be re[]sentenced[,]" and if so, the sentencing court would transfer Barber's CrR 7.8(b) motion to this court for consideration as a personal restraint petition. CP at 165.

In between the sentencing court's order and the hearing date set for correction of the sentence, the State appealed the sentencing court's Order on Motion for Relief from Judgment.

The hearing occurred in November 2022. At the hearing, the sentencing court explained again that it had originally intended to impose a 66-month determinate sentence. The sentencing court stated, "I don't think I ever said or implied that it would be 6[6] months to life, but merely 6[6] months," and reiterated that "that was the intent of this[c]ourt." VRP at 4, 6. The sentencing court explained that it was correcting the judgment pursuant to CrR 7.8(a), which "can be done *by the [c]ourt itself at any time*." VRP at 7 (emphasis added). Once again, the sentencing court characterized its actions as "correct[ing]" the judgment and sentence for a scrivener's error. VRP at 7.

The sentencing court made it clear it was not granting Barber's CrR 7.8(b) motion; it was only correcting the scrivener's error of its own accord under CrR 7.8(a). The sentencing court asked whether Barber wished to withdraw his CrR 7.8(b) motion. The sentencing court again explained that it would transfer the motion to this court for consideration as a personal restraint petition if Barber wished to maintain his motion. Barber responded that he believed the court accurately corrected his sentence based on the scrivener's error and considered the sentencing issue

resolved. Thus, the sentencing court considered the CrR 7.8(b) motion withdrawn and did not transfer it for consideration as a personal restrain petition.

The same day, the sentencing court entered an "Order Correcting Judgment and Sentence," altering Barber's term from his judgment and sentence to a 66-month determinate term. Although it was signed on November 10, 2022, the order reflected it was nunc pro tunc to the original sentencing date of January 11, 2019.

The State filed an amended notice of appeal from the Order Correcting Judgment and Sentence.

One month later, in December 2022, our Supreme Court reversed Division One's decision in *Forcha-Williams* I, and clarified that sentencing courts *do not* have the discretion to convert indeterminate terms carrying maximum sentences of life in prison to determinate terms, even for juvenile offenders. *Forcha-Williams* II, 200 Wn.2d at 598-99.

## ANALYSIS

The State argues the sentencing court lacked authority to impose a determinate sentence on Barber and asks us to remand for reinstatement of Barber's original 66-months-to-life indeterminate sentence.

Barber argues the time for the State's appeal has run. According to Barber, the only question presented for appeal is whether the sentencing court was fixing a scrivener's error when it clarified its original intention to impose the determinate term. If so, then the CrR 7.8(a) order was valid as a correction of a clerical error, which would make the determinate term effective as of the time of the original judgment and sentence in 2019. And if the determinate term was

effective in 2019, then the State's 2022 appeal of the judgment and sentence was too late—Barber's sentence cannot be appealed.

The State disagrees with the characterization of the sentencing court's error as clerical. But regardless of the characterization of the error, the State replies that Barber's sentence is appealable under RAP 2.2(b) because it includes a provision unauthorized by law (the determinate sentence) and omits a provision required by law (the indeterminate sentence with a maximum term of life). To the extent the deadline for appeal has run, among the State's arguments is that we should exercise our discretion under RAP 18.8 to extend the deadline. We agree with the State.

We first consider whether the substance of Barber's sentence warrants an appeal under the RAPs. RAP 2.2(b) governs the State's ability to appeal the superior court's actions in criminal cases. Subsection (b)(6) describes the circumstances when the State may appeal the defendant's sentence:

> Except as provided in section (c), the State or a local government may appeal in a criminal case only from the following superior court decisions . . .
>
> . . . .
>
> (6) *Sentence in Criminal Case*. A sentence in a criminal case that (A) is outside the standard range for the offense, (B) the state or local government believes involves a miscalculation of the standard range, (C) *includes provisions that are unauthorized by law*, or (D) *omits a provision that is required by law*.

RAP 2.2(b) (second and third emphasis added).

Barber's sentence fits within this rule. Barber's resulting determinate sentences for his second degree rape convictions are unlawful under our Supreme Court's decision in *Forcha-Williams* II (holding trial courts lack the discretion to convert indeterminate terms carrying maximum sentences of life in prison to determinate terms). And Barber concedes as much.

7

Br. of Resp't at 14-15 ("Barber agrees [the sentencing court's preclusion of an indeterminate sentence] is legally incorrect under the Washington Supreme Court's intervening decision in *Forcha-Williams* [II]."). Barber's sentence is required to be indeterminate with a maximum of life, but instead includes an unlawful determinate sentence. Thus, Barber's judgment and sentence is appealable under RAP 2.2(b)(6)(C) and (D) because it both "includes [a] provision[] that [is] unauthorized by law" *and* "omits a provision that is required by law."

But even if RAP 2.2 makes Barber's sentence appealable, Barber asserts that the 30-day time period to appeal still applies and, thus, the State's time to appeal under this rule has run. *See* RAP 5.2(a). This argument is rooted in Barber's characterization of the sentencing court's action as correcting a clerical error which resulted in his determinate term being effective nunc pro tunc to the original sentencing date in 2019. Barber argues because the correction's effective date was backdated to 2019, the State's 30-day deadline to appeal ran in 2019.

But even if the sentencing court was correcting a clerical error, the State reasonably points out that it had no incentive to appeal Barber's sentence until this supposed correction created an unauthorized sentence. If necessary, the State steers us to RAP 18.8, which allows us to extend the time for a party to appeal under certain circumstances. The rule states,

> The appellate court will only *in extraordinary circumstances* and *to prevent a gross miscarriage of justice* extend the time within which a party must file a notice of appeal . . . . The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section.

RAP 18.8(b) (emphasis added). Depending on how one characterizes the actions of the sentencing court, the State argues that the series of events leading to Barber's invalid sentence could fall within the scope of this rule.

We agree. Assuming, without deciding, that the sentencing court was correcting a clerical error under CrR 7.8(a), and further assuming that this means the State's window for appealing this unauthorized sentence under RAP 2.2 has past, this case clearly presents extraordinary circumstances that require us to extend the time for the State's appeal. Barber's original judgment and sentence in 2019 imposed an indeterminate term of 66 months to life—a lawful sentence both at the time and now. The sentence was in place for years, and the State had no reason to appeal it.

Then, Barber moved under CrR 7.8(b) for a determinate term based on a reasonable reading of new case law from the Court of Appeals. As a result, the sentencing court ordered the determinate term under CrR 7.8(a)—again, not an untenable decision given the then-current state of the law. Still, the State immediately appealed both orders stemming from that decision. Then, merely one month later, our Supreme Court clarified that the sentencing court had no discretion to impose a determinate term, making Barber's sentence unauthorized. Unless we exercise our discretion under RAP 18.8 to extend the State's time to appeal, Barber's invalid and unauthorized determinate term will stand without *ever* having been appealable.[4]

Moreover, unless RAP 18.8 is used here, the intent of the legislature would be frustrated. The legislature has specifically prescribed that defendants convicted of second degree rape *must* receive an indeterminate term with a maximum term of life. RCW 9.94A.507 (requiring an indeterminate term with the maximum term being the statutory maximum sentence for the

---

[4] At oral argument, Barber contended that RAP 18.8 should not apply to the State's appeal because the State's right to appeal is more limited than a defendant's right to appeal. Wash. Court of Appeals oral argument, *State v. Barber*, No. 57514-1-II (Oct. 24, 2023), at 22 min., 13 sec. through 22 min., 42 sec. (on file with court). We disagree. The plain language of RAP 18.8 does not differentiate between parties in its application, only neutrally stating that it can apply to "a party."

offense); *see also Forcha-Williams* II, 200 Wn.2d at 590-92. Any other sentence for this crime violates this legislatively-imposed structure. *See* RCW 9.94A.507; *Forcha-Williams* II, 200 Wn.2d at 598 ("[W]e hold where the legislature has chosen an indeterminate sentencing scheme, *Houston-Sconiers* gives judges the discretion to impose a minimum term below the statutory minimum to protect juveniles who lack adult culpability from disproportionate punishment. But *Houston-Sconiers* does not give judges the discretion to lower the maximum punishment or impose a determinate sentence."). Without question, RAP 18.8 should be used rarely, cautiously, and only in extraordinary circumstances. But this is such a circumstance. We decline to adopt strained procedural positions that would insulate Barber's sentence from appropriate correction.[5]

Once the State is permitted to appeal Barber's judgment and sentence under RAPs 2.2 and 18.8, the substantive result is clear. As conceded by Barber, his determinate term is invalid. We order the sentencing court to reinstate Barber's lawful, valid indeterminate term of 66 months to life.

---

[5] The State also argues the sentencing court erred when it did not transfer Barber's CrR 7.8(b) motion to this court for consideration as a personal restraint petition. The State asks us to convert Barber's CrR 7.8(b) motion to a personal restraint petition and consider the merits under that procedure.

But we view the facts differently from the State. As noted above, the record supports the conclusion that the sentencing court sua sponte issued its order under CrR 7.8(a) and Barber withdrew his CrR 7.8(b) motion. If Barber had not withdrawn his CrR 7.8(b) motion, the appropriate procedure would have been to remand the case to the sentencing court with instructions to transfer Barber's motion to this court for consideration as a personal restraint petition, per CrR 7.8(c)(2).

No. 57514-1-II

CONCLUSION

We exercise our discretion under RAP 18.8 to extend the time for the State to appeal Barber's judgment and sentence and determine the 66-month determinate term is unlawful. Thus, we order the sentencing court to reinstate Barber's original 66-month-to-life sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

VELJACIC, J.

11